UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BINH CUONG TRAN,<br><br>  Plaintiff,<br><br>  v.<br><br>S. SMITH, et al.,<br><br>  Defendants. | Case No.: 1:19-cv-00148-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 85) |

Plaintiff Binh Cuoung Tran is proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment for failure to exhaust the administrative remedies, filed September 30, 2021. (ECF No. 85.)

**I.**

**PROCEDURAL BACKGROUND**

This action is proceeding against Defendants J. Garcia and A. Brown, Jericoff and Munsel for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

On July 22, 2021, Defendants filed an answer to the first amended complaint. (ECF No. 79.)

On July 23, 2021, the Court issued an amended scheduling order. (ECF No. 80.)

On September 30, 2021, Defendants filed the instant motion for summary judgment. (ECF No. 85.)

1

On October 15, 2021, Plaintiff filed an opposition, and Defendants filed a reply on October 22, 2021. (ECF Nos. 86, 87.)

## II.

## LEGAL STANDARD

### A.    Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory unless unavailable. Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

Section 1997e(a) also requires "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effective without imposing some orderly structure on the course of its proceedings." Id. at 90-91. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

The failure to exhaust is an affirmative defense, and the defendant or defendants bear the burden of raising and proving the absence of exhaustion. Jones v. Bock, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at

1166. Otherwise, the defendant or defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust.  Id.

The PLRA recognizes no exception to the exhaustion requirement, and the court may not recognize a new exception, even in "special circumstances." Ross v. Blake, 136 S. Ct. 1850, 1862 (2016). The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." Id. at 1856. The Supreme Court has explained when an administrative procedure is unavailable:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.... Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.... And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.... [S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

Id. at 1859-60 (citations omitted

### B. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at c1166; Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).  "The evidence must be viewed in the light most favorable to the nonmoving party." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2014).

Initially, "the defendant's burden is to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. If the defendant meets that burden, the burden of production then shifts to the plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. However, the ultimate burden of proof on the issue of administrative exhaustion remains with the defendant. Id. "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

## III.

## DISCUSSION

### A. Summary of CDCR's Administrative Appeal Process[1]

A prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") satisfies the administrative exhaustion requirement for a non-medical appeal or grievance by following the procedures set forth in California Code of Regulations, title 15, §§ 3084-3084.9.

California Code of Regulations, title 15, § 3084.1(a) provides that "[a]ny inmate … under [CDCR's] jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate … can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." An inmate is required to use a CDCR Form 602 to "describe the specific issue under appeal and the relief requested." Cal. Code Regs. tit. 15, § 3084.2(a). An inmate is limited to one issue, or related set of issues, per each CDCR Form 602 and the inmate "shall state all facts known and available to [them] regarding the issue being appealed at the time of submitting" the CDCR Form 602. Cal. Code Regs. tit. 15, § 3084.2(a)(1) & (a)(4). Further, the inmate "shall list all staff member(s) involved and … describe their involvement in the issue." Cal. Code Regs. tit. 15, §

---

[1] On March 25, 2020, the grievance procedure outlined in § 3084.1, *et seq.*, was repealed effective June 1, 2020, as an emergency by the CDCR pursuant to Penal Code § 5058.3. See CCR, tit. 15, § 3084.1, ¶ 13 (June 26, 2020). However, there is no dispute that the events alleged in the complaint took place before the repeal took effect.

4

3084.2(a)(3). If known, the inmate must include the staff member's last name, first initial, title or position, and the dates of the staff member's involvement in the issue being appealed. Id. If the inmate does not know the staff member's identifying information, the inmate is required to "provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." Id.

Unless the inmate grievance falls within one of the exceptions stated in California Code of Regulations, title 15, §§ 3084.7(b)(1)-(2) and 3084.9, all inmate grievances are subject to a three-step administrative review process: (1) the first level of review; (2) the second level appeal to the Warden of the prison or their designee; and (3) the third level appeal to the Secretary of CDCR, which is conducted by the Secretary's designated representative under the supervision of the third level Appeals Chief. Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7(a)-(d). Unless the inmate grievance deals with allegations of sexual violence or staff sexual misconduct, an inmate must submit the CDCR Form 602 and all supporting documentation to each the three levels of review within 30 calendar days of the occurrence of the event or decision being appealed, of the inmate first discovering the action or decision being appealed, or of the inmate receiving an unsatisfactory departmental response to a submitted administrative appeal. Cal. Code Regs. tit. 15, §§ 3084.2(b)-(e), 3084.3, 3084.6(a)(2), 3084.8(b). When an inmate submits an administrative appeal at any of the three levels of review, the reviewer is required to reject the appeal, cancel the appeal, or issue a decision on the merits of the appeal within the applicable time limits. Cal. Code Regs. tit. 15, §§ 3084.6(a)-(c), 3084.8(c)-(e). If an inmate's administrative appeal is rejected, the inmate is to be provided clear instructions about how to cure the appeal's defects. Cal. Code Regs. tit. 15, §§ 3084.5(b)(3), 3084.6(a)(1). If an inmate's administrative appeal is cancelled, the inmate can separately appeal the cancellation decision. Cal. Code Regs. tit. 15, § 3084.6(a)(3) & (e).

///
///
///
///
///

### B.  Summary of Relevant Factual Allegations of Plaintiff's Complaint

On April 13, 2018, Plaintiff, who is Asian, was diagnosed with a broken rib and was provided with a medical chrono for a lower bunk by Dr. Smith. (Compl. 4, 6, 8,[2] ECF No. 1.) On April 25, 2018, Correctional Officers E. Munsel and M. Jericoff informed Plaintiff that he would be moving to the second tier because his cell was needed for another inmate. (Comp. 4.) Plaintiff informed them of his broken rib, that he had a medical chrono, and that he could not move cells. (Id.) Plaintiff could barely talk due to the pain from the broken rib. (Id.) The officers ignored Plaintiff's medical needs and told him that he would have to move cells. (Id.) Plaintiff refused to move and informed Officer Jericoff that he could not carry his stuff up the fourteen stairs to the second tier. (Id.) Officer Jericoff told Plaintiff to find someone to help him carry his stuff up the stairs. (Id.) Plaintiff asked Officer Munsel to stop the cell move, and he responded, "it's prison, and you have to deal with it." (Id.) Plaintiff refused to move several more times before Officer Jericoff made an ultimatum that Plaintiff had to either move to the second tier or he would be moved out of building 5. (Id.) Officer Jericoff told Plaintiff that an inmate was returning from court and needed to be housed on the lower tier. (Id.) Plaintiff had to move to the second tier. (Id.)

The inmate who returned from court was Hispanic and he was healthy. (Id. at 5.) Plaintiff later found out that the inmate was supposed to be housed in cell 132 but Officers Munsel and Jericoff wanted him to be housed in Plaintiff's cell because it is a little bigger and they give preferential treatment to Hispanic inmates. (Id.) There were numerous other cells in which inmates having no physical limitations or disabilities were housed and they were not selected to move to the upper tier. (Id. at 6.) There were fifty inmates housed on the bottom tier and four of them were Asian. (Id.)

### C.  Statement of Undisputed Facts[3]

1.  Plaintiff is an inmate of the California Department of Corrections of Rehabilitation (CDCR) and was when he filed this action on February 4, 2019. (First Am. Compl. (FAC) at 1.)

---

[2] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[3] Hereinafter referred to as "UF."

6

2. Plaintiff was an inmate at Sierra Conservation Center (SCC) from August 18, 2017 until June 12, 2019. (Declaration of T. Williams (Williams Decl.) ¶ 7.)

3. CDCR has an administrative appeal process whereby inmates, such as Plaintiff, may appeal any policy, decision, action, condition, or omission by CDCR or CDCR staff that has a material adverse effect upon the inmate's health, safety or welfare. (Cal. Code Regs. tit. 15, §§ 3084-3084.9; Declaration of Howard E. Moseley (Moseley Decl.) ¶¶ 2-6; Williams Decl. ¶¶ 3-4.)

4. CDCR's inmate appeals process was available to Plaintiff when he was an inmate at SCC And he utilized that process. (Pl.'s Resp. to Defs.' Req. for Admiss. Nos. 2-3 (Declaration of Arthur B. Mark III (Mark Decl.) Ex. 1; Williams Decl. ¶ 4.)

5. Plaintiff alleges that sergeants Brown and Garcia violated his constitutional rights on April 25, 2018, when they allegedly approved a cell move placing Plaintiff in an upper tier cell. (FAC at 9-10.)

6. In 2018, to exhaust CDCR's administrative appeal process, inmates were required to proceed through three levels of review and had to receive a review of their appeal and a decision from CDCR's Office of Appeals (OOA) (final level of review). (Cal. Code Regs. tit. 15, §§ 3084.1(b); 3084.7 (2018); Moseley Decl. ¶¶ 4-6.)

7. In 2018, regulations governing CDCR's inmate appeals process required inmates to "list all staff member(s) involved and . ... describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." Cal. Code Regs. tit. 15, § 3084.2(a)(3); Moseley Decl. ¶ 6.)

8. Between April 25, 2018 and February 4, 2019, Plaintiff submitted only one inmate Appeal, Log No. SCC-18-X-00745; OOA Log No. 1809284. (T. Williams Decl. ¶¶ 8-9, Exs. 1-3; H. Moseley Decl. ¶¶ 7-8, Exs. 1-3; Pl.'s Resp. to Interrogatories, Nos. 1-2 (Mark Decl. Exs. 2 and 3.)

7

9.      Appeal Log No. 18-00745 complained about officers Munsel and Jericoff only and did not identify sergeants Brown or Garcia.  (Moseley Decl. Ex. 3; Williams Decl. ¶ 9, Ex. 3; Mark Decl. Ex. 4 (letter from Plaintiff with untimely 2021 inmate grievance concerning Brown and Garcia).

10.     Appeal Log No. 18-0045 did not allege that Brown and Garcia or any unidentified Sergeants or other unidentified SCC staff, violated Plaintiff's rights with respect to the April 25, 2018 bed move.  (Moseley Decl. Ex. 3; Williams Decl. ¶ 9, Ex. 3; Mark Decl. Ex. 4.)

11.     On February 28, 2021, Plaintiff attempted to submit a grievance concerning the April 25, 2018 bed move that named Garcia and Brown, but it was rejected as untimely.  (Mark Decl. Ex. 4.)

### D.     Analysis of Defendants' Motion

Defendants argue that although Plaintiff filed a grievance with respect to the bed move in 2018, it did not mention Defendants Brown or Garcia, nor did it suggest that any unidentified staff were responsible for the alleged violations of his rights.

In opposition, Plaintiff argues that he was unaware of Defendants Garcia and Brown's Involvement in April 2018 and could not list or name them in his grievance.  Plaintiff also argues that he was not provided a "staff assistant" or "investigative employee" to assist him in filing an appeal. Plaintiff further contends that he was not provided the "confidential inquiry report" to assist in filing an inmate grievance.

In response, Defendants argue Plaintiff has offered no evidence to create a dispute of material fact that he failed to exhaust his available administrative remedies for his claims against Defendants Brown and Garcia.  Defendants further argue that Plaintiff presents no evidence that prison officials thwarted him from using his available remedies.

Here, it is undisputed that Plaintiff is an inmate of the California Department of Corrections of Rehabilitation (CDCR) and was when he filed this action on February 4, 2019.  (UF 1.)  Plaintiff was an inmate at Sierra Conservation Center (SCC) from August 18, 2017 until June 12, 2019.  (UF 2.) CDCR has an administrative appeal process whereby inmates, such as Plaintiff, may appeal any policy, decision, action, condition, or omission by CDCR or CDCR staff that has a material adverse effect upon the inmate's health, safety or welfare.  (UF 3.)  CDCR's inmate appeals process was available to

8

Plaintiff when he was an inmate at SCC and he utilized that process. (UF 4.) Plaintiff alleges that sergeants Brown and Garcia violated his constitutional rights on April 25, 2018, when they allegedly approved a cell move placing Plaintiff in an upper tier cell. (UF 5.) In 2018, to exhaust CDCR's administrative appeal process, inmates were required to proceed through three levels of review and had to receive a review of their appeal and a decision from CDCR's Office of Appeals (OOA) (final level of review). (UF 6.) In 2018, regulations governing CDCR's inmate appeals process required inmates to "list all staff member(s) involved and . .. describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." (UF 7.) Between April 25, 2018 and February 4, 2019, Plaintiff submitted only one inmate Appeal, Log No. SCC-18-X-00745; OOA Log No. 1809284. (UF 8.) Appeal Log No. 18-00745 complained about officers Munsel and Jericoff only and did not identify sergeants Brown or Garcia. (UF 9.) Appeal Log No. 18-0045 did not allege that Brown and Garcia or any unidentified sergeants or other unidentified SCC staff, violated Plaintiff's rights with respect to the April 25, 2018 bed move. (UF 10.) On February 28, 2021, Plaintiff attempted to submit a grievance concerning the April 25, 2018 bed move that named Garcia and Brown, but it was rejected as untimely. (UF 11.) However, Plaintiff could not have initially grieved about the actions of Defendants Garcia and Brown because he was unaware of their identity and/or involvement at that time, and Defendants present no evidence to the contrary.[4] When Plaintiff learned of the identify of Defendants Garcia and Brown and their involvement, he

---

[4] Indeed, on February 10, 2021, the Court issued Findings and Recommendations recommending that Plaintiff's motion to amend be granted to add the claims against Defendants Garcia and Brown, noting "Plaintiff filed his motion to amend timely under the scheduling order and he only became aware of Sergeants Brown and Garcia's involvement by way of discovery response from Defendants." (ECF No. 42 at 3; see also ECF No. 86, Ex. E.) The Findings and Recommendations were adopted in full, and Plaintiff filed an amended complaint on April 9, 2021. (ECF Nos. 49, 53.)

9

filed a grievance but it was rejected as untimely.[5]

Under the specific circumstances of this case, the Court finds that Defendants have not shown that there was an *available* remedy for Plaintiff to use to complain about the actions of Defendants Garcia and Brown in approving the cell move decision made by Defendants Munsel and Jericoff who were specifically named in Plaintiff's original and timely appeal. See Albino, 747 F.3d at 1172 (Plaintiff has "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.").[6]  This is particularly so because the grievance sufficiently alerted prison officials to the nature of the alleged wrong, i.e., inappropriately approving a cell move placing Plaintiff in an upper tier cell. See Reyes v. Smith, 810 F.3d 654, 659 (9th Cir. 2016) (noting "[t]he grievance process is only required to 'alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.' ").  Thus, dismissing Plaintiff's claim for failure to exhaust under these circumstances "does not advance the statutory goal of avoiding unnecessary interference in prison administration," but instead "prevents the courts from considering a claim that has already been fully vetted within the prison system." Reyes, 810 F.3d at 658.

## IV.
## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment be denied.

This Findings and Recommendation will be submitted to the United States District Judge

---

[5] In this grievance, Plaintiff stated, in pertinent part, "I recently discovered the action, omission, and involvement of sergeants Brown and Garcia, from the officers Jericoff and Munsel testimony."  (ECF No. 86, Ex. F.)

[6] Defendants cite Bruister v. Asuncion, No. 2:17-cv-05106-PSG-RAO, 2019 WL 1744215, at *6 (C.D. Cal. Mar. 6, 2019), report and recommendation adopted, No. 2:17-cv-05106-PSG-RAO, 2019 WL 6655388 (C.D. Cal. Sept. 10, 2019), in which the plaintiff's inmate grievance named three specific correctional officers involved in an excessive force incident, and Plaintiff brought a civil rights action not only against those three officers but also against other officers who he had not named in his inmate grievance. The Court found that the Plaintiff had not exhausted his administrative remedies against the officers not named in his grievance because it did "not appear that prison officials ignored Plaintiff's violation of this procedural rule as there is nothing in Plaintiff's grievance to alert the prison that he was complaining about any unnamed officers" and "the appeals examiners did not reference these [other] Defendants or consider any excessive force claims against any unnamed officers in their decisions." Id.  However, Bruister is distinguishable because there was no claim that Plaintiff was not aware of the unnamed Defendants involvement in the incident at the time the initial grievance was filed.

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with this Findings and Recommendation, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 25, 2022**

UNITED STATES MAGISTRATE JUDGE