# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BINH CUONG TRAN, | Case No. 1:19-cv-00148-SAB (PC) |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | AND DIRECTING THE CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF |
| S. SMITH, et al., | DEFENDANTS |
| Defendants. | (ECF No. 103.) |

Plaintiff Binh Cuong Tran is proceeding pro se in this civil rights action filed pursuant to 42 U.S.C. § 1983. The parties consented to Magistrate Judge jurisdiction. (ECF No. 105.)

Currently before the Court is Defendants' motion for summary judgment, filed December 1, 2022.

## I.

## RELEVANT HISTORY

This action is proceeding against Defendants Munsel, Jericoff, Garcia, and Brown for deliberate indifference to a serious medical need in violation of the Eighth Amendment.

Defendants Munsel and Jericoff filed an answer to the complaint on March 19, 2020. (ECF No. 25.)

On July 29, 2020, the Court issued the discovery and scheduling order. (ECF No. 34.)

On March 10, 2021, the Court granted, in part, Plaintiff's motion to amend the complaint. (ECF No. 49.)

1

1    Plaintiff filed a first amended complaint on April 9, 2021.  (ECF No. 54.)

2    On July 22, 2021, Defendants filed an answer to the first amended complaint.  (ECF No.

3    79.)

4    On July 23, 2021, the Court issued an amended discovery and scheduling order.  (ECF

5    No. 80.)

6    On December 1, 2022, Defendants filed a timely motion for summary judgment.  (ECF

7    No. 103.)  Plaintiff filed an opposition on January 13, 2023, and Defendants filed a reply on

8    January 27, 2023.  (ECF Nos. 108, 109.)

9    **II.**

10   **LEGAL STANDARD**

11   **A.    Summary Judgment Standard**

12   Any party may move for summary judgment, and the Court shall grant summary

13   judgment if the movant shows that there is no genuine dispute as to any material fact and the

14   movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks

15   omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's

16   position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to

17   particular parts of materials in the record, including but not limited to depositions, documents,

18   declarations, or discovery; or (2) showing that the materials cited do not establish the presence or

19   absence of a genuine dispute or that the opposing party cannot produce admissible evidence to

20   support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider

21   other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R.

22   Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.

23   2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

24   In judging the evidence at the summary judgment stage, the Court does not make

25   credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509

26   F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all

27   inferences in the light most favorable to the nonmoving party and determine whether a genuine

28   issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v.

1  City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation
2  omitted).

3          In issuing this order, the Court carefully reviewed and considered all arguments, points
4  and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if
5  any, objections, and other papers filed by the parties. Omission of reference to an argument,
6  document, paper, or objection is not to be construed to the effect that this Court did not consider
7  the argument, document, paper, or objection. This Court thoroughly reviewed and considered the
8  evidence it deemed admissible, material, and appropriate.

9                                              **III.**

10                                         **DISCUSSION**

11     **A.      Summary of Plaintiff's Complaint**

12          On April 13, 2018, Plaintiff was diagnosed with a broken rib and was provided with a
13  medical chrono for a lower bunk.  On April 25, 2018, Correctional Officers E. Munsel and M.
14  Jericoff informed Plaintiff that he would be moving to the second tier because his cell was
15  needed for another inmate.  Plaintiff informed them of his broken rib, that he had a medical
16  chrono, and that he could not move cells.  Plaintiff could barely talk due to the pain from the
17  broken rib.  The officers ignored Plaintiff's medical needs and told him that he would have to
18  move cells.   Plaintiff refused to move and informed Officer Jericoff that he could not carry his
19  stuff up the fourteen stairs to the second tier.  Officer Jericoff told Plaintiff to find someone to
20  help him carry his stuff up the stairs.  Plaintiff asked Officer Munsel to stop the cell move, and
21  he responded, "it is prison, and you have to deal with it."  Plaintiff refused to move several more
22  times before Officer Jericoff made an ultimatum that Plaintiff had to either move to the second
23  tier or he would be moved out of building 5.   Officer Jericoff told Plaintiff that an inmate was
24  returning from court and needed to be housed on the lower tier.  Plaintiff had to move to the
25  second tier. Sergeants Brown and Garcia reviewed and approved the bed move.
26  ///
27  ///
28  ///

**B.      Statement of Undisputed Facts[1]**

1.      Plaintiff Tran is an inmate of the California Department of Corrections and Rehabilitation (CDCR) and was an inmate housed at Sierra Conservation Center (SCC) from August 18, 2017, to June 12, 2019.

2.      Defendant Jericoff has been employed as a correctional officer with CDCR for over twenty years and has worked at SCC since 2014.  (Declaration of Jericoff (Jericoff Decl.) ¶ 1.)

3.      Defendant Munsel has been employed as a correctional officer with CDCR for about sixteen years and has worked at SCC his entire career.  (Declaration of Munsel (Munsel Decl.) ¶ 1.)

4.      Defendant J. Garcia worked for CDCR for thirty-two years and is now retired.  In 2018, he was a correctional sergeant assigned to SCC.  (Declaration of J. Garcia (Garcia Decl.) ¶ 1.)

5.      Defendant A. Brown has worked for CDCR for almost twenty-six years and is currently a correctional sergeant assigned to SCC.  (Declaration of A. Brown (Brown Decl.) ¶ 1.)

6.      On April 12, 2018, Plaintiff sought medical treatment at SCC complaining that, for about a month, his chest hurt when he coughed.  (Pl. Dep. at 87:20-89:6 & Ex. B; Declaration of S. Smith (Smith Decl.) ¶ 3 & Ex. A.)

7.      On April 13, 2018, Plaintiff was diagnosed with a non-displaced rib fracture via an x-ray taken that same day.  (Smith Decl. ¶ 4 & Ex. B.)

8.      A non-displaced rib fracture is one where the bone is cracked, but properly aligned.  (Smith Decl. ¶ 4.)

9.      Plaintiff sought no medical treatment between April 14 and 18, 2018.  (Pl.'s Dep. at 92:10-17.)

10.      Plaintiff saw Dr. Smith on April 19, 2018 for his complaint of rib pain.  (Smith

---

[1] Hereinafter referred to as "UF."

Decl. ¶ 6.)  Plaintiff reported that the nonproductive coughing had improved.  (Pl.'s Opp'n, Ex. C. ECF No. 108.)

11.    Dr. Smith gave Plaintiff a lower bunk chrono on April 19, 2018, and did not provide a restriction to the ground floor or lower tier.  (Pl.'s Dep. at 95:6-8; Smith Decl. ¶ 7.)

12.    Plaintiff walked to and from his visit with Dr. Smith on April 19, 2018.  (Pl. Dep. at 96:1-8.)

13.    Dr. Smith did not provide any kind of order excusing Plaintiff from his education program or any other activities.  (Pl.'s Dep. at 96:13-14.)

14.    Plaintiff was in unit C-5 at SCC from October 1, 2017, until he left SCC on June 12, 2019.  (Jericoff Decl. ¶ 4; Pl.'s Dep. at 31:7-13, 36:6-20, 40:11-14.)

15.    On April 25, 2018, Plaintiff was housed in cell 101, which is on the lower tier of unit C-5.  (Jericoff Decl. ¶ 6; Pl.'s Dep. at 50:16-51:7.)

16.    On the morning of April 25, 2018, Plaintiff was told by officer Jericoff that he would be moving to cell 226, which is on the upper tier of unit C-5.  (Pl.'s Dep. at 97:4-24; Jericoff Decl. ¶ 6.)

17.    Plaintiff claims he told Defendants Munsel and Jericoff on April 25, 2018, that he could not move to cell 226 because he had a broken rib and claimed it would be painful and dangerous to climb stairs.  (Pl.'s Dep. at 97:4-14, 100:10-18.)

18.    After officer Jericoff initiated the bed move on April 25, 2018, it was reviewed and approved by sergeant Garcia and then by sergeant Brown.  (Garcia Decl. ¶¶ 3-5; Brown Decl. ¶¶ 3-5.)

19.    Plaintiff has never had any communications with sergeant Garcia or Brown regarding his April 25, 2018 bed move.  (Pl.'s Dep. at 118:17-09; Garcia Decl. ¶ 6; Brown Decl. ¶ 6.)

20.    After officer Jericoff told Plaintiff about the move, Plaintiff got out of bed, got dressed by putting on his shirt, pants, and shoes.  (Pl.'s Dep. at 97:25-99:9.)

21.    After being informed by officer Jericoff on April 25, 2018, Plaintiff left his cell

1   and walked to the office in his housing unit to ask Defendants Munsel and Jericoff about the

2   move to cell 226.  (Pl.'s Dep. at 99:14-100:2.)

3           22.    On April 25, 2018, Plaintiff moved from cell 101 to cell 226 and was assigned the

4   bottom bunk.  (Pl.'s Dep. at 51:16-52:15, 53:7-9.)

5           23.    Defendant Jericoff used no physical force on Plaintiff and did not physically

6   touch him in any way on April 25, 2018.  (Pl.'s Dep. at 117:15-23.)

7           24.    Defendant Munsel used no physical force on Plaintiff and did not physically touch

8   him in any way on April 25, 2018.  (Pl.'s Dep. at 117:24-118:1.)

9           25.    Plaintiff had an education assignment five days a week from November or

10  December 2017 until October 2018.  (Pl.'s Dep. at 62:17-63:18.)

11          26.    The education assignment was three hours long, five days a week.  (Pl.'s Dep. at

12  64:11-13, 66:3-7.)

13          27.    The education assignment was in a different building than Plaintiff's housing unit

14  and it took at least ten minutes to walk there.  (Pl.'s Dep. at 64:5-10, 67:1-13.)

15          28.    Plaintiff would stand up and sit down throughout his education class.  (Pl.'s Dep.

16  at 67:14-68:2.)

17          29.    Plaintiff would walk to chow during the time he had his rib injury in April 2018,

18  twice a day.  (Pl.'s Dep. at 69:25-70:13.)

19          30.    Plaintiff would go up and down fourteen steps each time he went to chow.  (Pl.'s

20  Dep. at 70:14-71:13.)

21          31.    Plaintiff also attended guitar classes from September 2017 to June 2019 once a

22  week for one hour fifty-minutes.  (Pl.'s Dep. at 75:12-77:5.)

23          32.    Plaintiff would sit in a chair and hold a guitar and sometimes stand and walk

24  during the guitar class.  (Pl.'s Dep. at 77:8-78:11.)

25          33.    Plaintiff walked to chow on April 13, 2018.  (Pl.'s Dep. at 92:3-6.)

26          34.    Plaintiff attended his education assignment and chow line between April 14 and

27  18, 2018.  (Pl.'s Dep. at 92:3-93:1.)

28          35.    In April 2018, Plaintiff was prescribed ibuprofen for pain, but he did not take it

1  regularly and did not take the Tylenol with codeine prescribed by Dr. Smith.  (Pl.'s Dep. at 93:5-
2  24, 94:17-95:1.)

3     36.     Plaintiff claims he saw a nurse for rib pain on April 25, 2018, but he has no
4  records reflecting a visit on that date as it was a walk-in.  (Pl.'s Dep. at 103:12-104:24.)

5     37.     Plaintiff sought no medical treatment on April 26, 2018.  (Pl.'s Dep. at 104:25-
6  105:2.)

7     38.     Plaintiff submitted a request for medical services on April 27, 2018, seeking a
8  lower-level restriction.  (Smith Decl. ¶ 8 & Ex. D.)

9     39.     Plaintiff was evaluated on May 1, 2018, and Dr. Smith determined Plaintiff did
10  not require the lower lever restriction.  (Smith Decl. ¶ 8 & Ex. D.)

11     40.     Plaintiff submitted a grievance concerning Dr. Smith's denial of the lower tier
12  restriction and the doctor who considered the grievance and California Correctional Health Care
13  Services (CCHCS) headquarters agreed that Plaintiff did not need a lower tier accommodation.
14  (Pl.'s Dep. at 106:23-109:14 & Ex. 3.)

15     41.     After Plaintiff moved to the upper tier on April 25, 2018, he walked to all his
16  activities and went up and down the stairs to those activities ten times a day.  (Pl.'s Dep. at
17  132:16-133:8.)

18     42.     Plaintiff never tripped or fell going up or down the stairs after he moved to the
19  upper tier.  (Pl.'s Dep. at 134:16-18.)

20     43.     On May 1, 2018, Plaintiff was moved to cell 220 at his request and on officer
21  Jericoff's direction due to Plaintiff's discomfort with his cellmate.  (Pl.'s Dep. at 53:10-57:16;
22  Jericoff Decl. ¶ 12.)

23     44.     Plaintiff was housed in cell 220 on the top tier for over a year.  (Pl.'s Dep. at
24  53:20-54:1.)

25     45.     After Plaintiff moved to cell 220 on May 1, 2018, he did not complain about
26  being on the upper tier and he never asked to move back to the lower tier.  (Pl.'s Dep. at 139:16-
27  140:12.)

28     46.     No doctor told Plaintiff he could not climb stairs with a fractured rib.  (Pl.'s Dep.

7

at 101:21-23.)

47.    No doctor ever gave Plaintiff a prescription for bed rest after he was diagnosed with a fractured rib.  (Pl.'s Dep. at 134:19-21.)

48.    Plaintiff does not have access to SOMS and does not know what information would appear on the lower bunk chrono in SOMS.  (Pl.'s Dep. at 95:9-11.)

49.    Plaintiff has no training in medicine.  (Pl.'s Dep. at 19:25-20:6.)

**C.    Analysis of Defendants' Motion**

Defendants initially argue that Plaintiff's fractured rib was not an obvious and serious medical need on April 25, 2018.  Defendants further argue that the undisputed evidence shows that no reasonable jury could conclude that Defendants were deliberately indifferent to a known medical need on April 25, 2018.  In the alternative, Defendants argue they are entitled to qualified immunity.

In opposition, Plaintiff argues Defendants Jericoff and Munsel acted with deliberate indifference and outside the scope of their authority by moving Plaintiff from cell 101 to cell 226 on April 25, 2018.  Defendants Garcia and Brown knew that Plaintiff had recently received a serious medical chrono, yet they authorized and approved the transfer.

The Eighth Amendment's prohibition against cruel and unusual punishment protects convicted prisoners.  Bell v. Wolfish, 441 U.S. 520, 535 (1979); Graham v. Connor, 490 U.S. 386, 395 n.10 (1989).  While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  To state a claim a plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  "Deliberate indifference is a high legal standard," Simmons v. Navajo County Ariz., 609 F.3d

1  1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is

2  shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical

3  need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d

4  at 1096). The requisite state of mind is one of subjective recklessness, which entails more than

5  ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted);

6  Wilhelm, 680 F.3d at 1122.

7  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of

8  action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v.

9  Gamble, 429 U.S. 97, 105-06 (1976)). "Medical malpractice does not become a constitutional

10  violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; Snow, 681 F.3d at

11  987-88; Wilhelm, 680 F.3d at 1122 ("The deliberate indifference doctrine is limited in scope.").

12  **A.    Objectively Serious Medical Need**

13  Defendants argue that Plaintiff's previously fractured and healing rib was not an obvious

14  and serious medical need on April 25, 2028.

15  Accordingly, the Court must first consider whether Defendants, as the moving parties,

16  have met their initial burden of showing prima facie entitlement to summary judgment on the

17  issue of Plaintiff's medical deliberate indifference claim. Celotex Corp. v. Catrett, 477 U.S 317,

18  323 (1986).

19  The prima facie elements of medical deliberate indifference are (1) a "serious medical

20  need by demonstrating that failure to treat a prisoner's condition could result in further

21  significant injury or the unnecessary and wanton infliction of pain" and (2) that the defendant's

22  "response to the need was deliberately indifference." Wilhelm, 680 F.3d at 1122 (internal

23  quotation marks and citation omitted). The second prong is satisfied by showing "(a) a

24  purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm

25  caused by the indifference." Jett, 439 F.3d at 1096 (internal citations omitted).

26  The undisputed facts, when viewed in the light most favorable to Plaintiff, indicate that

27  he had a serious medical need.   A serious medical need is evidenced by "the existence of an

28  injury that a reasonable doctor or patient would find important and worthy of comment or

treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds by <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Here, the record amply supports a finding that Plaintiff suffered substantial pain as a result of the rib fracture, given the undisputed evidence reflects that on April 13, 2018, Plaintiff was diagnosed with a non-displaced rib fracture via an x-ray taken that same day. (UF 7.) When Plaintiff complained of rib pain, Dr. Smith gave him a lower bunk chrono on April 19, 2018. (UF 10-11.) Dr. Smith declares that "[t]he lower bunk chrono was a reasonable accommodation for [Plaintiff], because it may have been difficult for him to climb to the upper bunk with a rib fracture." (Smith Decl. ¶ 7.) Dr. Smith prescribed Tylenol with Codeine to use along with ibuprofen. (Smith Decl. ¶ 6, Ex. C.) Plaintiff alleges that on April 25, 2018, when he was advised to move to cell 226, he experienced pain from having to pack up and carry his property up the stairs. (Pl.'s Opp'n at 3 ¶ 16.) ) Thus, taken together, Plaintiff's allegations regarding the pain he experienced, and Dr. Smith's accommodations and treatment are sufficient to meet the objective prong.

### B.    Defendants Garcia and Brown

Defendants Garcia and Brown declare that they were not aware Plaintiff had a rib injury when they approved the bed move on April 25, 2018. (Garcia Decl. ¶ 7; Brown Decl. ¶ 7.) It is undisputed that Plaintiff had no communication with Garcia or Brown on April 25, 2018. (UF 19.) Defendants further declare that they reviewed and approved the bed move in SOMS, which does not contain medical conditions or diagnoses or medical records. (Garcia Decl. ¶¶ 3-5; Brown Decl. ¶¶ 3-5.) The SOMS did list a medical restriction for a lower bunk, which did not prevent Plaintiff from being housed on an upper tier. (Garcia Decl. ¶ 5; Brown Decl. ¶ 5.)

It is undisputed that Plaintiff does not have access to SOMS and does not know what information would appear on the lower bunk chrono in SOMS. (UF 48.) Plaintiff has failed to

1   present any admissible evidence to demonstrate that either Defendant Garcia or Brown had any

2   knowledge that Plaintiff had a rib injury when they approved the bed move on April 25, 2018.

3   Rather, Plaintiff argues that Garcia and Brown were "grossly negligent in supervising

4   subordinates" and "exhibited deliberate indifference," but there is no evidence to demonstrate

5   they were aware he had a rib fracture when they approved the bed move.  In fact, the evidence

6   demonstrates otherwise.

7       Plaintiff has presented no evidence to refute that Garcia and Brown approved the bed

8   move in SOMS and there was no restriction preventing Plaintiff from moving to an upper tier.

9   (Garcia Decl. ¶ 4; Brown Decl. ¶ 4.)  Further, there is no evidence to contradict Garcia and

10  Brown's evidence that they were unaware of and did not have access to records documenting his

11  medical conditions.   (Garcia Decl. ¶¶ 4, 7; Brown Decl. ¶¶ 4, 7.)   In addition, Plaintiff's

12  argument that as sergeants Defendants Garcia and Brown were "high-ranking officials" who "set

13  in motion" a constitutional violation is devoid of any evidentiary support and does not form a

14  basis for liability.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) ("[s]weeping

15  conclusory allegations will not suffice to prevent summary judgment."); see also Iqbal, 556 U.S.

16  at 676 (a supervisory official cannot be held liable under a theory of respondeat superior or

17  vicarious liability).  Plaintiff's simple belief that Defendants Garcia and Brown knew or should

18  have known does not demonstrate deliberate indifference.  Farmer v. Brennan, 511 U.S. 825, 842

19  (1994); Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (a prison official acts

20  with deliberate indifference only if he subjectively knows of and disregards an excessive risk to

21  inmate health and safety).   Accordingly, summary judgment shall be granted in favor of

22  Defendants Garcia and Brown.

23      **C.    Defendants Jericoff and Munsel**

24      Non-medical personnel, including the Defendants in this case, do not have access to

25  inmate medical records and are entitled to rely upon the judgment of medical staff, such reliance

26  defeats the subjective intent element of a deliberate indifference claim.  Peralta v. Dillard, 744

27  F.3d 1076, 1086-87 (9th Cir. 2014).  As discussed in Peralta, where the defendant is not a doctor,

28  the defendant's reliance on the determinations of medical staff is not wanton infliction of

unnecessary pain.  Id. at 1087; see also Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) (a nonmedical administrator is entitled to defer to the judgment of jail health professionals so long as inmate was not ignored); Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1084 (9th Cir. 2013) (non-medical prison staff "did not act with deliberate indifference toward [plaintiff] as they reasonably relied on the expertise of the prison's medical staff") (citing Johnson v. Doughty, 433 F.3d 1001, 1010-11 (7th Cir. 2006)).

Here, Defendants Jericoff and Munsel relied on the medical determinations by Dr. Smith. It is undisputed that Dr. Smith examined Plaintiff for his fractured rib on April 12 and 19, 2018, including review of his x-rays.  (UF 6-7; 10-11.)  Dr. Smith gave Plaintiff a lower bunk chrono on April 19, 2018, and did not provide a restriction to the ground floor or lower tier.  (UF 5.) Plaintiff submitted a request for medical services on April 27, 2018, seeking a lower-level restriction.  (UF 38.)  Plaintiff was evaluated on May 1, 2018, and Dr. Smith determined Plaintiff did not require the lower lever restriction.  (UF 39.)  Plaintiff's mere disagreement with Dr. Smith's medical opinion that a lower-tier restriction was not necessary does not demonstrate deliberate indifference. Toguchi, 391 F.3d at 1058 (disagreement over the necessity or extent of medical treatment does not show deliberate indifference); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference to [plaintiff]'s serious medical needs."); Mayfield v. Craven, 433 F.2d 873, 874 (9th Cir. 1970) ("[A] difference of opinion between a prisoner patient and prison medical authorities as to what treatment is proper and necessary does not give rise to a claim under [§ 1983].)  Plaintiff submitted a grievance concerning Dr. Smith's denial of the lower tier restriction and the doctor who considered the grievance and California Correctional Health Care Services (CCHCS) headquarters agreed that Plaintiff did not need a lower tier accommodation.  (UF 40.)  No doctor told Plaintiff he could not climb stairs with a fractured rib. And he had no prescription for bed rest after he was diagnosed with a fractured rib.  (UF 46-47.)

When Defendant Jericoff initiated Plaintiff's bed move on April 25, 2018, and when it was approved by Defendants Garcia and Brown, the evidence demonstrates that the only housing restriction noted in SOMS was for a lower bunk; there was no medical restriction on moving

1  Plaintiff to upper tier cell or on him climbing stairs.  (Garcia Decl. ¶¶ 3-5; Brown Decl. ¶¶ 3-5;

2  Jericoff Decl. ¶ 7.)  Defendant Munsel declares that he had no involvement in approving the bed

3  move or initiating it as he did not regularly work in Plaintiff's building.  (Munsel Decl. ¶¶ 2, 5.)

4  The SOMS does not contain medical conditions or diagnoses or medical records.  (Garcia Decl.

5  ¶¶ 3-5; Brown Decl. ¶¶ 3-5; Jericoff Decl. ¶ 5.)  While Plaintiff contends that he told Defendants

6  Jericoff and Munsel he had a broken rib, it was reasonable for them to rely on the DPP/Disability

7  Accommodation in SOMS to determine any housing restrictions as officers cannot rely on

8  inmates' statements to medical conditions, restrictions, or expressed preferences.  (Jericoff Decl.

9  ¶¶ 5, 8-9, 11; Munsel Decl. ¶ 3.)  Plaintiff cannot submit his own opinion as to his medical

10  condition and the need for a lower-tier restriction.  Fed. R. Evid. 702.

11  Further, the undisputed evidence demonstrates that after Plaintiff was advised of the cell

12  move, he got out of bed, got dressed by putting on his shirt, pants, and shoes.  (UF 20.)  He then

13  walked to the officer where Defendants Munsel and Jericoff were and spoke with them regarding

14  the move.  (UF 21.)  On April 25, 2018, Plaintiff moved from cell 101 to cell 226 and was

15  assigned the bottom bunk.  (UF 22.)   Neither Defendant used no physical force on Plaintiff and

16  did not physically touch him in any way on April 25, 2018.  (UF 23-24.)

17  Even if Plaintiff did not agree with the bed move on April 25, 2018, Plaintiff was moved

18  to a different upper tier cell on May 1, 2018 (just 6 days thereafter), and lived on the upper tier

19  for over a year without complaint, climbing stairs ten times per day to attend chow and other

20  activities and never tripping or falling.  (UF 42-45.)  Although Plaintiff argues that non-party Dr.

21  Smith "failed to issue a chrono for Plaintiff to be excused from education," there is no evidence

22  that he even asked for such chrono or that he wanted to be excused from the activities.  (Pl.'s

23  Opp'n at 23.)  Nor did Plaintiff allege that Dr. Smith failed to provide such accommodations in

24  the grievance he filed against him.  (Pl.'s Dep. Ex. 3.)  Likewise, during his deposition, Plaintiff

25  did not express his belief that he should have been medical excused from the activities.  (UF 25-

26  34.)  Further, Plaintiff admits that he chose not to take prescribed pain medication, indicating that

27  he was able to attend his activities—involving substantial movement-despite his rib fracture and

28  any alleged pain therefrom.  (UF 35.)  More significantly, after Plaintiff moved to a different

1  upper tier on May 1, 2018, he never complained about being on the upper tier or asked to move

2  back to a lower tier.  (UF 45.)

3         Plaintiff's contention that none of the Defendants were not assigned to "Receiving and

4  Release building, so they acted completely outside the scope of their authority[,]" is irrelevant as

5  this case does not involve the Receiving and Release building.  Further, there is simply no

6  evidence to support Plaintiff's contention that any Defendant acted outside the scope of his/her

7  authority when he was moved to an upper tier.

8         Plaintiff's contention that Defendants Jericoff and Munsel acted "outside of scope of their

9  authority[,] is not supported by an admissible evidence.  In support of his contention, Plaintiff

10 cites to his claim that inmate Perez did not have any safety concerns or medical needs to be

11 housed in a lower tier and Defendants Jericoff and Munsel "lied in discovery" about why Perez

12 needed to go back to cell 101.  However, the determination of whether inmate Perez needed to be

13 housed in cell 101 is not relevant to whether Defendants' were deliberately indifference to

14 *Plaintiff's* serious medical needs.  In addition, Plaintiff's contention that inmate Perez could have

15 been housed in any cell within the facility, is not supported by competent evidence as Plaintiff is

16 not competent to provide such opinion.  Plaintiff points to a group appeal submitted in 2019,

17 which inmate Perez allegedly signed (Pl.'s Opp'n Ex. O), but the appeal is not evidence which

18 would support a finding as to where Perez should have been housed in April 2018.

19        In sum, Dr. Smith examined Plaintiff for his rib fracture and reviewed the x-rays and

20 determined on April 19, 2018—seven days before the bed move—that Plaintiff's condition did

21 not require restriction to a lower tier.  Dr. Smith's determination was reviewed by another

22 physician and CCHCS headquarters who agreed that Plaintiff did not need a lower tier

23 accommodation.  (UF 40.)  Based on the evidence presented, Defendants relied on medical

24 staff's determination that Plaintiff did not need a lower tier restriction when they made the bed

25 move on April 25, 2018, and summary judgment shall be granted.  Peralta v. Dillard, 744 F.3d at

26 1086-87.

27 ///

28 ///

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.**

**ORDER**

Based on the foregoing, it is HEREBY ORDERED that:

1.      Defendants' motion for summary judgment (ECF No. 103), filed on December 1, 2022, is GRANTED; and

2.      The Clerk of Court shall enter judgment in favor of Defendants and terminate this action.

IT IS SO ORDERED.

Dated:   **February 13, 2023**

UNITED STATES MAGISTRATE JUDGE

15